993 F.2d 228
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re: Bobby D. MCGHEE; In re: Janet U. McGhee, Debtors.
Bobby D. McGhee; Janet U. McGhee, Plaintiffs-Appellants,
v.
First National Bank of Ferrum, Defendant-Appellee.
In re: Bobby D. McGhee; In re: Janet U. McGhee, Debtors.
Bobby D. McGhee; Janet U. McGhee, Plaintiffs-Appellants,
v.
Crestar Bank, Defendant-Appellee.
 Nos. 92-2296, 92-2297.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 30, 1993
Decided: May 6, 1993
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Judge. (CA-92-320-R, CA-92-319-R, BK-91-1578-7-RKR, BK-91-232-7-232-A, BK-91-208-7-AP)
 Jack Grady Monday, Monday & Monday, Martinsville, Virginia, for Appellants.
 William Francis Stone, Jr., Attorney at Law, P.C., Martinsville, Virginia, for Appellee First National Bank; Phillip Richard Lingafelt, Glenn, Flippin, Feldman & Darby, Roanoke, Virginia, for Appellee Crestar Bank.
 Robert A. Ziorgas, Glenn, Flippin, Feldman & Darby, Roanoke, Virginia, for Appellee Crestar Bank.
 W.D.Va.
 AFFIRMED.
 Before RUSSELL and NIEMEYER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Bobby McGhee and Janet McGhee ("the McGhees") appeal from the affirmance of a bankruptcy court decision granting Crestar Bank's ("Crestar") and The First National Bank of Ferrum's ("FNBF") motions to except their debts from discharge under 11 U.S.C. § 523(a)(2)(B). Crestar and FNBF based their motions on the McGhees' use of false representations on financial statements that Crestar and FNBF relied upon in extending credit to the McGhees. Because we conclude that the bankruptcy court was not clearly erroneous in finding that Crestar and FNBF reasonably relied on those representations and did not err in holding the McGhees liable on a commercial loan guarantee to FNBF, we affirm.
 
 I.
 
 2
 In 1983, Crestar's predecessor in interest, United Virginia Bank, extended an unsecured line of credit in the amount of $10,000 to the McGhees. The McGhees submitted a financial statement along with their application for the credit line that listed their residence as one of their assets. The McGhees represented on the financial statement that title to the house was in their name and that the house was free and clear of any liens. The McGhees made the same representation to Crestar on their financial statements each year the line of credit was continued. In 1985, at the McGhees' request, Crestar extended the line of credit to $25,000; it further extended the credit line to $30,000 in 1990.
 
 
 3
 FNBF and the McGhees had a long history of dealing together, dating back to at least 1970. Over the course of that relationship, the McGhees gave FNBF financial statements in support of various loans. The loans in question in this case were made to the McGhees' business, Private Coach Travel Business, Inc. ("Private Coach"), at various times during their twenty-year relationship. On October 11, 1989, these loans were consolidated into one loan for $144,510.40, with FNBF making one additional loan for $4,011.02. The McGhees, however, had represented in a 1987 financial statement, given in conjunction with a commercial loan, that they owned their residence and that it was free and clear of any liens. The McGhees had also signed a commercial guarantee agreement in conjunction with this financial statement in which they personally guaranteed all existing and future debts of their business to FNBF.
 
 
 4
 On June 11, 1991, the McGhees filed a Chapter 7 bankruptcy petition. At a creditor's hearing held in the bankruptcy court, Crestar and FNBF discovered-much to their surprise-that, in fact, the McGhees did not own their residence; Mr. McGhee's father had title to the house. After this discovery, both Crestar and FNBF filed motions with the bankruptcy court under 11 U.S.C. § 523(a)(2)(B), arguing that the McGhees' liability for moneys advanced under the line of credit and for the commercial loan should be excepted from discharge because of the McGhees' use of false written statements in connection with the extension of credit. The bankruptcy court agreed, granting Crestar and FNBF relief, and the district court affirmed. The McGhees appeal.
 
 II.
 
 5
 The McGhees' first argument is that the bankruptcy court was clearly erroneous in finding that Crestar reasonably relied upon the McGhees' financial statements in extending to them the line of credit. In light of the evidence in the record, however, we conclude that the bankruptcy court's finding was not clearly erroneous.
 
 
 6
 The provision of the bankruptcy code on which Crestar relies in its motion for exception from discharge is set forth at 11 U.S.C. § 523(a)(2)(B). Section 523(a)(2)(B) provides:
 
 
 7
 (a) A discharge under ... this title does not discharge an individual debtor from any debt-
 
 
 8
 ....
 
 
 9
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
 
 
 10
 ....
 
 
 11
 (B)use of a statement in writing-
 
 
 12
 (i) that is materially false;
 
 
 13
 (ii) respecting the debtor's or an insider's financial condition;
 
 
 14
 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
 
 
 15
 (iv) that the debtor cause to be made or published with intent to deceive.
 
 
 16
 11 U.S.C. § 523(a)(2)(B). The McGhees only challenge the bankruptcy court's conclusion that Crestar reasonably relied upon the financial statements in extending the line of credit to them. We review that determination for clear error. In re Bonnett, 895 F.2d 1155, 1157 (7th Cir. 1989).
 
 
 17
 The bankruptcy court relied on a number of facts in reaching its conclusion that Crestar reasonably relied on the McGhees' financial statements. First, the credit line was for a small amount-$10,000. Second, Crestar was familiar with Mr. McGhee personally, had a previous banking relationship with the McGhees, and were familiar with Mr. McGhee's reputation in the community as a minister. Third, the credit report Crestar obtained on the McGhees did not reveal any lien on the McGhees' residence. Finally, the bankruptcy court found that Crestar was entitled to rely on the good faith of the credit application* and the credit report, and that no red flag had been raised by any of the facts before it. These factors led the bankruptcy court to conclude that Crestar reasonably relied on the financial statement in making the loan. On review, the district court found that these findings were based on credibility determinations, and concluded that based on the record, the bankruptcy court's conclusion was not clearly erroneous.
 
 
 18
 We agree with the district court. The two decisions that the district court relied upon in reaching its decision support its conclusion that the bankruptcy court was not clearly erroneous in finding reasonable reliance. In the first case, In re Martin, 761 F.2d 1163, 1166 (6th Cir. 1985), the court held that a bank's failure to verify information in a financial statement was not unreasonable where the loan was small relative to the debtor's purported net worth, the bank had prior dealings with the debtor, and the bank obtained a credit report. In the second case, In re Garman, 643 F.2d 1252, 1259-60 (7th Cir. 1980), cert. denied, 450 U.S. 910 (1981), the court concluded that a bank's failure to verify information in a financial statement was not unreasonable where the bank and the debtor had a longtime relationship, the debtor had made the misrepresentations over a three year period, and the statements contained no information to place the bank on inquiry notice.
 
 
 19
 In reaching its decision on Crestar's motion, the bankruptcy court found four factors present that suggested that Crestar's reliance on the McGhees' financial statements was reasonable. Were we to hold today that Crestar's reliance was unreasonable, there would be little point in banks requiring financial statements. Our legal system expects that individuals will make truthful representations on financial statements, and allows others to reasonably rely on those representations. The bankruptcy court's review of the facts in this case reflected those principles. In addition, both Martin and Garman support the bankruptcy court's decision that Crestar's reliance was reasonable. Accordingly, we conclude that the bankruptcy court was not clearly erroneous on this point.
 
 III.
 
 20
 The McGhees' second argument is that the bankruptcy court's conclusions that the McGhees were personally liable for the business loans from FNBF and that FNBF reasonably relied upon the McGhees' financial statements in giving the loans to them were clearly erroneous. In light of the evidence in the record, however, we conclude that the bankruptcy court did not err in holding the McGhees personally liable for Private Coach's business loans, and also conclude that the bankruptcy court's finding that FNBF's reliance was reasonable was not clearly erroneous.
 
 
 21
 With respect to FNBF's commercial loan to Private Coach, the district court concluded that the bankruptcy court was not clearly erroneous in finding that the McGhees were personally liable for the debts of the corporation in light of the facts and circumstances surrounding the loan. The critical facts for the district court were that the McGhees signed a guarantee agreement with FNBF for the loan, thereby personally guaranteeing the note, and that they also signed a co-signor notice form, which clearly explained their liability for the note. The district court concluded that both of these agreements put the McGhees on notice that they would be liable for the debts of the corporation, and in fact did so. As the district court aptly observed: "To find the agreement to be the guaranty of Private Coach would be to find that the parties intended for Private Coach to guaranty loans to itself. It was not clearly erroneous for the bankruptcy court to find that the parties did not intend such an unusual agreement." This observation is well-founded on the record, and we affirm the bankruptcy court on this point.
 
 
 22
 With respect to the McGhees' assertion that the bankruptcy court erred in concluding that FNBF reasonably relied upon the McGhees' financial statements in giving the loans to them, we find no clear error. As in the district court, where the court noted that "[t]he McGhees advance two sketchy and unsupported arguments against excepting the debt from discharge under 11 U.S.C.s 523(a)(2)(B)," the McGhees fail to advance a compelling, or even coherent, argument to support their position. The two cases of In re Martin, 761 F.2d at 1166, and In re Garman, 643 F.2d at 1259-60, again support our conclusion that the bankruptcy court's determination that FNBF reasonably relied upon the McGhees' financial statements was not clearly erroneous.
 
 
 23
 The bankruptcy court based it decision on a number of factors that we found to be relevant supra, in our analysis of the McGhees' position with respect to Crestar. First, FNBF and the McGhees had a long relationship involving both personal and business loans over the course of twenty years. Second, the McGhees made the misrepresentations in question here repeatedly over the course of that relationship. Finally, the statements contained no information that, on its face, suggested that further investigation was required. These facts lead us to the conclusion that the bankruptcy court's decision was not clear error, a conclusion supported by the Garman decision as well. Garman, 643 F.2d at 1259-60. Therefore, we affirm the bankruptcy court on this point.
 
 IV.
 
 24
 In this case the bankruptcy court did not commit clear error in concluding that both Crestar and FNBF reasonably relied on repeated false representations in the McGhees' financial statements in extending further credit to the McGhees. The bankruptcy court also did not err in holding the McGhees' liable on a commercial loan guarantee signed by the McGhees. Because the bankruptcy court did not commit error in this case, we affirm its decision to except Crestar and FNBF's debts from discharge.
 
 AFFIRMED
 
 
 *
 As one court has observed, "[t]he law recognizes the duty of each to refrain from even attempted deceit of another with whom he deals, and the right of the latter to assume that he will do so." Jacobsen v. Whitley, 138 Wis. 434, 120 N.W. 285, 286 (1909) ( quoted in In re Garman, 643 F.2d 1252, 1260 (7th Cir. 1980), cert. denied, 450 U.S. 910 (1981))